In re Alexander C. McCURDY and
Joyce E. McCurdy, Debtors.

ALLENTOWN SUPPLY COMPANY, t/a
Asco Fuels, Penn Air & Heat, Inc. and
Harry P. Creveling, Plaintiffs,

v.

Alexander C. McCURDY, Defendant.

Bankruptcy No. 5–83–00129.
Adv. No. 5–83–0359.

United States Bankruptcy Court,
M.D. Pennsylvania.

Jan. 16, 1985.

Wardell F. Steigerwalt, Allentown, Pa., for plaintiffs.

Terence L. Faul, Bangor, Pa., for defendant/debtor.

## OPINION AND ORDER

THOMAS C. GIBBONS, Bankruptcy Judge:

Allentown Supply Company, t/a Asco Fuels, Penn Heat & Air, Inc., and Harry P. Creveling (Creveling) commenced this proceeding seeking an exception to the debtors' discharge pursuant to 11 U.S.C. § 523(a)(4) of the Bankruptcy Code. Creveling claims the debtor, Alexander C. McCurdy (McCurdy), should have certain debts excepted from discharge on the basis of fraud or defalcation while acting in a fiduciary capacity as an officer of plaintiff's corporations. For the reasons set forth herein, all objections to the defendant's discharge are dismissed.

The facts are as follows. In the fall of 1979, McCurdy became an employee of Asco Fuels. Thereafter, in the summer of 1980, a new corporation was formed by Creveling known as Penn Heat & Air, Inc. McCurdy was asked to supervise both the operations of Asco Fuels and Penn Heat & Air, Inc. Both corporations utilized the same facilities, common management and common employees. McCurdy's employment with both corporations continued until August of 1981. During his employment with Asco Fuels and Penn Heat & Air, McCurdy was appointed an officer of both corporations. Essentially, McCurdy's responsibilities were that of a general manager who was responsible for the daily operation of both businesses. An employment contract defining McCurdy's duties was never memorialized. The primary business of Penn Heat & Air was the insulation of heating ventilation and air conditioning equipment. Shortly after McCurdy's employment terminated with Asco Fuels and Penn Heat and Air, he formed a new corporation known as Gelex, Inc. with an individual named George Lumpe. Gelex was involved in the installation of plumbing and pipe fitting. McCurdy and Creveling never entered into any agreements or restrictive convenants which would control or influence McCurdy's plumbing and pipe fitting business. McCurdy filed for bankruptcy on February 22, 1983.

On August 24, 1983, Creveling filed a three count complaint against McCurdy alleging numerous violations of fiduciary duties that McCurdy had as an officer of the aforementioned corporations. In Count I, Creveling alleges that McCurdy entered into a contract with Allentown Supply Company, t/a Asco Fuels. By the terms of the contract, McCurdy was to receive a salary of $40,000 a year plus commissions based on certain percentages of profits. Creveling alleges that McCurdy made certain transfers of funds from Asco Fuels to Penn Heat & Air, Inc. while Asco Fuels was losing money and indeed insolvent. In addition, without the authority of the Board of Directors or any officers or owners of the corporation, McCurdy made certain payments to a company called I PAC II. The corporation allegedly received no consideration for any of the transfers of funds from Asco to I PAC II. McCurdy also is alleged to have made certain advances to himself pursuant to his employment contract when in fact the company was losing money in the years 1980 and 1981. These transfers would have to be in violation of McCurdy's contract because bonuses would only be paid upon corporate profits. The effect of all this was the appearance that Penn Heat & Air, Inc. was making vast profits when in fact it was

losing money as was Asco Fuels. Creveling alleges that the above constituted a misappropriation of corporate funds due to fraudulent conduct of a fiduciary of the corporation.

Count II of the complaint alleges that while McCurdy was a Secretary of Penn Heat & Air, Inc., the company entered into a contract for the construction of an IGA store in Broadsville, Pennsylvania. During the construction, Michael Eichert was employed as a clerk of the works at a salary of $200 per week. Creveling alleges that without the knowledge of any of the officers of the corporation McCurdy promised Eichert 25% of the profits to be derived from the construction of the project. Creveling further alleges Eichert received $16,-000 and his weekly salary was increased to $250 a week. In addition, the construction exceeded the original contract and no profit was ever gained. Creveling alleges that McCurdy, who at this time was the Secretary of Penn Heat & Air, also incorporated a competitive business known as Gelex, Inc. without the knowledge of any of the officers or the Board of Directors of Penn Heat & Air. As owner of Gelex, McCurdy allegedly commenced work on heating installations and construction projects following the week ending his termination of employment with Penn Heat & Air. Creveling asserts that McCurdy took with him salesmen who had not turned over to Penn Heat & Air any contracts for approximately three months at McCurdy's directions. Numerous other violations of McCurdy's fiduciary duty are alleged and in particular that McCurdy overdrew checking accounts of Penn Heat & Air of approximately $40,-000.00. Creveling also asserts that because McCurdy failed to assign specific materials to particular jobs in the field Penn Heat & Air took severe profit losses on some jobs.

In Count III, Creveling asserts that McCurdy failed to pay withholding tax for Penn Heat & Air to both the Federal and State Government for an amount of approximately $40,000. Creveling, as an officer of Penn Heat & Air, was threatened with a levy and was forced to pay the tax

in the amount of $13,000 along with interest. In short, all of the above actions are deemed to have been a violation of McCurdy's fiduciary duty to Asco Fuels and Penn Heat & Air. The fiduciary duty was supposedly violated through fraudulent conduct and misappropriation of funds by McCurdy as an officer of the corporations.

In addressing this proceeding, we are asked to determine the nondischargeability of certain debts pursuant to 11 U.S.C. § 523(a)(4). In pertinent part, § 523(a)(4) provides:

> § 523. **Exceptions to discharge.**
>
> (a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt
>
>> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny.

 The burden of proof in an action to determine the nondischargeability of a debt is on the plaintiff. *Harris v. Fidelity & Deposit Company of Maryland* (In re Harris), 7 B.R. 284, 288–89 (S.D.Fla.1980). Furthermore, such exceptions to discharge are strictly construed against the plaintiff. *Truax & Hovey, Ltd. v. Grosso* (In re Grosso), 9 B.R. 815, 821 (N.D.N.Y.1981).

 As the language of § 523(a)(4) indicates, debts incurred by certain acts of fiduciaries, embezzlement and larceny will be excepted from discharge. Under the first of these three a debt will not be declared nondischargeable unless debtors are fiduciaries. The plaintiff in this case claims McCurdy owed and violated his fiduciary duty to the corporations. In response, McCurdy does not challenge or question his characterization as a fiduciary of the plaintiff corporations. Consequently, we will not analyze McCurdy's role as an officer of a corporation under Pennsylvania law, but rather will proceed as if he indeed was a fiduciary of the plaintiff corporations. A determination of the nondischargeability of the debt under the pertinent provisions of § 523(a)(4) also requires a finding of either fraud or defalcation

while acting in a fiduciary capacity. The plaintiff must prove the type of fraud contemplated by the Bankruptcy Code which involves moral turpitude or intentional wrong to render the debt nondischargeable. *North Central Wool Manufacturing Corp. v. Carothers,* 22 B.R. 114, 120 (Bankr.Minn.1982). See also *3 Collier on Bankruptcy* ¶ 523.08[4] (15th ed. 1982). We note that this burden is a stringent one, but nonetheless very necessary to provide the debtor with comprehensive relief from his burdensome debts. In reviewing the extensive evidence adduced at trial and the complaint, answer and briefs filed by both parties, we find that the plaintiff has failed to meet the burden of proof required to establish an exception to discharge under § 523(a)(4). In short, the evidence does not reflect any sort of moral turpitude or intentional wrong on the part of the debtor in his role as an officer of both Asco Fuels and Penn Heat & Air. At best, the evidence reflected poor management of a business by a general manager of a corporation. This alone is not enough to justify any sort of exceptions to discharge. We note, however, that the evidence adduced at trial does not convince us that indeed McCurdy was guilty of any mismanagement or even exercised poor business judgment as the operating officer of Penn Heat & Air.

■ Another requirement of § 523(a)(4) is a finding of defalcation. Defalcation includes the failure of a fiduciary to account for money he received in his fiduciary capacity. *Aetna Insurance Company v. Byrd* (In re Byrd), 15 B.R. 154, 156 (Bankr.E.D.Va.1981); *Rhode Island Lottery Commission v. Cairone* (In re Cairone), 12 B.R. 60, 63 (Bankr.D.R.I. 1981); *Johnson v. Gramza* (In re Gramza), 13 B.R. 733, 735 (Bankr.E.D.Wis.1981). Although the plaintiff never used the term defalcation he has accused the defendant of misappropriation of certain funds. We did not find, however, that the plaintiff supported his allegations with any concrete proof. The testimony revealed that operating funds were initially transferred from Asco Fuels to Penn Heat & Air and that these funds were constantly transferred back and forth between the corporations. We find nothing irregular in these transfers due to the closeness and complimentary demand for services that the corporations served. These transfers were also made by a business manager (McCurdy) who was given complete control to run the corporations. We also find that the books and records of both corporations were at all times available to Creveling. Creveling and McCurdy would meet on a weekly basis to discuss the financial affairs of the corporations. Creveling would be supplied with financial records prepared by McCurdy and the controller of the corporations, Elinor Segal. There is absolutely no suggestion in the evidence that any money McCurdy received in his fiduciary capacity was diverted by him for his own benefit or in other words not for use by the corporations. In fact, the transfers were inter-corporate transfers made to shift funds from one corporation to another corporation as demand on corporation assets required.

■ The next provision under § 523(a)(4), embezzlement, has been defined as "the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come. It differs from larceny in the fact that the original taking of the property was lawful, or with the consent of the owner, while in larceny the felonious intent must have existed at the time of the taking." *3 Collier on Bankruptcy* ¶ 523.15[3] (15th ed. 1982). Once again, we repeat that the evidence, both oral and written, presents no suggestion that any funds were embezzled by the defendant for his own benefit. The plaintiff suggests that certain bonuses that McCurdy gave to himself were actually an embezzlement or misappropriation of funds. We find this contention totally without merit. Even though the corporations suffered losses for fiscal years 1979 and 1980, evidence presented revealed that Penn Heat and Air, Inc. during the year ending March 31, 1981 earned a profit. As a consequence and in reliance on the provisions of McCur-

dy's employment contract with the plaintiff, McCurdy did receive a bonus based on the profit of the corporation. A tax return for the corporation prepared by Peat, Marwick & Mitchell and signed by the plaintiff, Harry Creveling, indicated that a fund in excess of $9,000 had been set aside to pay a bonus to Alexander McCurdy. We cannot ignore the significance of this evidence which was in effect ignored by the plaintiff. As such, we find that the plaintiff's claim of embezzlement fails.

Additional allegations of fraud and abuse of fiduciary capacity simply were not supported by the evidence and failed to meet the requirements of § 523(a)(4). For instance, we find no fraud or defalcation while acting as a fiduciary of a corporation by McCurdy's formation of the Gelex corporation. The evidence reflects that Gelex was incorporated to engage in the plumbing subcontracting business. Gelex did not perform any work on behalf of any corporation or client formerly associated with either Penn Heat & Air, Inc. or Asco Fuels. The evidence further reveals that Penn Heat & Air's checking account was not overdrawn during the period McCurdy was an officer of the corporation. No testimony was presented supporting Creveling's allegations that no profit was made from the construction of the IGA store or that any wages paid to Eichert were unreasonable or unfair in the construction industry. In fact, Creveling never established with any certainty exactly what wages Eichert received from his employment on the IGA construction project. Other testimony reveals that Penn Heat & Air was delinquent with regard to withholding taxes due to the Internal Revenue Service (IRS). McCurdy arranged a repayment schedule with the IRS which was current when McCurdy ceased his employment with Penn Heat & Air. Penn Heat & Air terminated operations and an assessment in excess of $13,000.00 was levied against Penn Heat & Air and subsequently paid by Creveling. In short, this evidence does not substantiate Creveling's assertion of fraud or misappropriation of funds by McCurdy.

The final provision of § 523(a)(4), larceny, is defined as the fraudulent and wrongful taking and carrying away the property of another with intent to convert such property to his (the taker's) use without the consent of the owner. As distinguished from embezzlement, the original taking of the property was unlawful." *Collier, supra.* We find no larceny present in this case since the debtor lacked the requisite fraudulent intent and since the debtor was in lawful possession of all corporate funds. We also note that the plaintiff made no claim that the defendant committed any larceny with corporation funds.

Finally, we must comment about the scope and weight to be given to the extensive evidence both oral and written that was presented during the course of this trial. The plaintiff was given wide latitude in the manner of presentation of evidence. The total of evidence does not suggest that there was any misappropriation of funds, fraud, defalcation, embezzlement or larceny on behalf of the defendant in his fiduciary capacity as an officer of the plaintiff corporations. We note again that at best the evidence shows an investment into a business corporation which in essence was a bad investment causing a loss and eventual liquidation of the plaintiff businesses. We note, and must fully agree with the defendant, that even if this court was to find that the debtor acted with poor business judgment or indeed even mismanaged the business, this would not be enough to find the debts dischargeable within the provisions contemplated by § 523(a)(4) of the Bankruptcy Code. We simply cannot except from discharge debts on the basis of accusations which are not supported by any concrete oral and written testimony that prove or establish any of the requirements of the discharge sections of the Code. In short, we find that the plaintiff has simply not met its burden of proof under § 523(a)(4) of the Bankruptcy Code.

This opinion constitutes findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.