**In the Matter of Lawrence Raymond SMITH, Wilma Jean Smith, Debtors.**

**THORP CREDIT, INC., Plaintiff,**

v.

**Lawrence Raymond SMITH, Wilma Jean Smith, Defendants.**

**Bankruptcy No. 84–1746–C. Adv. No. 85–0019.**

United States Bankruptcy Court, S.D. Iowa.

Oct. 1, 1985.

Lee P. Hook, Ankeny, Iowa, for Thorp Credit, Inc.

Mark A. Otto, Newton, Iowa, for debtors.

## MEMORANDUM OF DECISION

RICHARD F. STAGEMAN, Bankruptcy Judge.

At Des Moines, in the Southern District of Iowa, on the 30th day of September 1985.

The matter before the court is Thorp Credit's complaint to have a debt owed to it by Lawrence and Wilma Smith declared nondischargeable under 11 U.S.C. § 523(a)(2)(C). The case has been submitted on stipulated facts.

### I.

The parties have stipulated the following facts.

1. The Smiths filed a petition in bankruptcy on November 13, 1984.

2. On October 31, 1984, less than two weeks before filing for bankruptcy, the Smiths borrowed $1,416.97 from Thorp Credit. That money was used as follows:

| | |
|---|---|
| $1,331.37 | Payment to Thorp Credit on prior indebtedness. |
| $ 42.31 | Credit Life Insurance premium. |
| $ 43.29 | Cash advance. |

When the Smiths borrowed money on October 31, 1984, they were approximately 30 days delinquent on their payments for prior indebtedness to Thorp Credit.

3. The Smiths assert that representatives of Thorp Credit contacted them several times concerning their delinquency.

4. The Smiths' indebtedness to Thorp Credit prior to October 31, 1984, arose from the following transactions:

| | | |
|---|---|---|
| March 9, 1984 | $300 | For payment of |
| Dec. 27, 1983 | $400 | insurance and utility bills. |
| Oct. 13, 1983 | $400 | For payment of insurance premiums and car repair bills. |

Aug. 23, 1983 $200
Oct. 18, 1982 $500

To the best of Smiths' recollection, the proceeds from the December 27, 1983, the August 23, 1983, and the October 8, 1982, loans were used to purchase goods and services for their support and maintenance. However, they cannot locate any records that verify their recollection.

5. All of the Smiths' debt to Thorp Credit is "consumer debt" as that term is defined in 11 U.S.C. § 101(7).

6. Thorp Credit filed its complaint on February 1, 1985.

## II.

The central issue in this dischargeability complaint is the proper construction of subparagraph (C) of 11 U.S.C. § 523(a)(2). Subparagraph (C) was added to the Code by the Bankruptcy Amendments and Federal Judgeship Act of 1984. It provides:

(C) for purposes of subparagraph (A) of this paragraph, consumer debts owed to a single creditor and aggregating more than $500 for "luxury goods or services" incurred by an individual debtor on or within forty days before the order for relief under this title, or cash advances aggregating more than $1,000 that are extensions of consumer credit under an open end credit plan obtained by an individual debtor on or within twenty days before the order for relief under this title, are presumed to be nondischargeable; "luxury goods or services" do not include goods or services reasonably acquired for the support or maintenance of the debtor or a dependent of the debtor; an extension of consumer credit under an open end credit plan is to be defined for purposes of this subparagraph as it is defined in the Consumer Credit Protection Act (15 U.S.C. 1601 et seq.);

11 U.S.C. § 523(a)(2)(C).

The most significant aspect of subparagraph (C) is the clause creating a presumption of nondischargeability. In creating that presumption, subparagraph (C) radically alters the burden of proof in certain nondischargeability complaints. Under subparagraphs (A) and (B) of subsection 523(a)(2) the creditor has the burden of proving all the elements of fraud by clear and convincing proof. *See In re Bonefas*, 41 B.R. 74, 78 (Bkrtcy.N.D.Iowa 1984). Those elements are hard to prove under a preponderance of the evidence standard, and even harder to prove under a "clear and convincing" standard. Under subparagraph (C), a creditor can avoid the heavy burden of proving fraud.

Subparagraph (C)'s presumption of nondischargeability, however, does not apply to all debts. There are three specific limits to its applicability. First, only two kinds of debt qualify: consumer debt for "luxury goods or services" and debt resulting from cash advances that were extensions of consumer credit under an open end credit plan. 11 U.S.C. § 523(a)(2)(C). Second, the debt must have been incurred shortly before the bankruptcy petition was filed: forty days in the case of consumer debt and twenty days in the case of cash advances. *Id.* Third, the debt must be owed to one creditor and, when aggregated, must exceed a minimum amount. The minimum is $500 for consumer debt and $1,000 for cash advances. *Id.*

The stipulated facts provide no basis for invoking the cash advance provisions of subparagraph (C). *See id.;* 15 U.S.C. § 1602(i). Thorp Credit, therefore, must base its complaint upon the subparagraph's consumer debt provisions. Apparently, Thorp Credit saw that the loan transaction of October 31, 1984, occurred within forty days of the filing of the bankruptcy petition and concluded that subparagraph (C) applied. The issues Thorp Credit failed to address, however, were whether that loan transaction was for "luxury goods or services," and whether the debt for such goods and services exceeded $500.

■ The court concludes that subparagraph (C) does not apply to the facts of this case. Of the $1,416.97 loaned to the Smiths on October 31, a total of $1,331.37 was used to extinguish the Smith's prior debt to Thorp Credit. Only $85.60 worth of

new debt was created: $42.31 for credit life insurance peddled by Thorp Credit, and $42.29 cash taken home. Thus, the largest portion of the transaction involved either a renewal or refinancing of credit. *See Campbell River Timber Co. v. Vierhus*, 86 F.2d 673, 675 (9th Cir.1936) (defining renewal); Black's Law Dictionary 1152 (5th ed. 1979) (defining refinance). As such, it involved something separate and distinct from "property" and "services". *See* 11 U.S.C. § 523(a)(2). And, logically, since it did not involve property, it could not have involved goods. *See also*, U.C.C. §§ 2-105(1), 9-105(h) (definitions of goods); Black's Law Dictionary, *supra* at 624 (same). Because the refinancing portion of the transaction did not involve goods or services, it cannot be a basis for invoking subparagraph (C).

The remaining portion of the loan transaction involved $85.60 worth of new debt. That amount does not satisfy the minimum aggregate amount of $500.00 needed to invoke subparagraph (C). Therefore, the court need not determine whether credit insurance is a luxury good or service.[1] Because the loan transaction of October 31, 1984, did not involve debt exceeding $500.00 for luxury goods or services, subparagraph (C) does not apply to this case.

It could be argued that, for purposes of subparagraph (C), when there has been a refinancing or renewal of credit within forty days before the filing of a petition, the court should look to the prior debt being extinguished and determine if the prior debt was incurred for luxury goods or services. If so incurred, and if subparagraph (C) otherwise applied, the debt would be nondischargeable.

That argument is apparently the position that Thorp Credit wants the court to adopt, since it provides the only method by which Thorp Credit could prevail in this case. The court, however, cannot adopt that position. There is nothing in the language of subparagraph (C) that indicates the court should look to debts that were antecedent to the debt incurred within the forty day or twenty day time period. Moreover, if the court did examine prior debts, the time limits found in subparagraph (C) would lose most of their effect. There is simply no basis in the language of the statute for concluding that 11 U.S.C. § 523(a)(2)(C) applies in this case.

There are also two policy grounds for ruling against Thorp Credit in this case. First, Thorp Credit's apparent construction of subparagraph (C) would run counter to the policy of bankruptcy law that statutes relating to discharge are to be liberally construed in favor of the debtor and strictly construed against the creditor. *See Gross v. Fidelity and Deposit Co.*, 302 F.2d 338, 340 (8th Cir.1962); *In re McCurdy*, 45 B.R. 728, 730 (Bkrtcy.M.D.Pa.1985); 3 Collier on Bankruptcy ¶ 523.05A (15th ed. 1985).

Second, application of subparagraph (C) to this case would not further the purpose for which Section 523(a)(2)(C) was adopted. That purpose was identified in a Senate report explanation of a pre-enactment version of subparagraph (C).[2] The Senate report states:

> however, such presumption shall not apply to the extent such debts were incurred for expenses which were reasonably necessary for the support of the debtor or the debtor's dependents, and shall be rebuttable by the debtor.'

S.Rep. No. 65, 98th Cong., 1st Sess. 17 (1983). No House or Senate committee reports accompanied the Bankruptcy Amendments and Federal Judgeship Act of 1984, which enacted subparagraph (C). 1984 U.S.Code Cong. & Ad.News (Legis.Hist.) 576.

---

1. Under the scheme of the section cash is not considered a good. *See* 11 U.S.C. § 523(a)(2) and subparagraph (C).

2. The pre-enactment version explained in the Senate Report provided:
 (b) Section 523 of title 11, United States Code, shall be further amended by striking out subsection (d) and inserting in lieu thereof the following:
 '(d) For purposes of subsection (a)(2) of this section, any debt which was incurred on or within forty days before the date of the filing of a petition under this title is presumed to be nondischargeable under such subsection;

Section 523 is amended and expanded to address a type of unconscionable or fraudulent debtor conduct not heretofore considered by the Code—that of loading up. In many instances a debtor will go on a credit buying spree in contemplation of bankruptcy. The new subsection ... creates a rebuttable presumption that any debt incurred by the debtor within 40 days before the filing of the petition has been incurred under circumstances that would make the debt nondischargeable. S.Rep. No. 65, 98th Cong., 1st Sess. 58 (1983). The reason for addressing the "loading up" problem was that loading up "[n]ot only [results] in direct losses for the creditors that are victims of the spree, but it also creates a higher absolute level of debt so that all creditors receive less in liquidation." *Id.* at 9.

In the case at bar, there has been no buying spree or "loading up" that victimized creditors. The $85.60 worth of new debt created by the October 31 loan transaction is insignificant, especially when considering that $42.31 of it arose because Thorp Credit persuaded the Smiths to buy credit life insurance. This case does not present the kind of problem Congress sought to address when it enacted subparagraph (C). The complaint should be dismissed and the debt owed by the Smiths to Thorp declared dischargeable.

### III.

Subsection (d) of Section 523 requires the court, in certain circumstances, to award costs and reasonable attorney's fees to the debtor if the debtor prevails in a dischargeability complaint involving a consumer debt. 11 U.S.C. § 523(d). The award of costs and fees is required when the court finds "that the position of the creditor was not substantially justified," and that special circumstances do not make an award of costs and fees unjust. *Id.*

 Although some courts have held that the debtor must request the award of costs and attorney's fees in the answer to the complaint, *e.g., In re Finnie,* 21 B.R. 368, 371 (Bkrtcy.D.Mass.1982), other courts have held that the debtor need not plead a request for attorney's fees. *E.g., In re*

*Sidore,* 41 B.R. 206, 209 (Bkrtcy.W.D.N.Y. 1984). This court believes the latter position is correct. There is no provision in the Code or in the Bankruptcy Rules which requires the debtor to plead a request for costs and attorney's fees. Nor is there good reason to hold that such pleading is required. "Since § 523(d) clearly states that the debtor is entitled to costs and reasonable attorney's fees, the creditor is on notice that loss of his claim could result in his being assessed those fees and costs." *Id.*

 The court has no problem finding that Thorp Credit's position in this proceeding was not substantially justified. It is obvious from the wording of subparagraph (C) that the provision only applies to a narrow set of circumstances. Nevertheless, Thorp Credit proceeded with its complaint, totally ignoring the limiting language in the provision and the purpose for which the provision was enacted. Section 523(d) is in the Code to discourage precisely the kind of action that was taken by Thorp Credit.

The court finds no special circumstances in this case that would make an award of costs and fees unjust. Therefore, Thorp Credit will have judgment for costs and reasonable attorney fees rendered against it.

An appropriate order will be entered.