In re Gary Lawrence NEAL, Debtor.

AETNA FINANCE COMPANY, a Delaware corporation, d/b/a ITT Financial Services, Appellant,

v.

Gary Lawrence NEAL, a/k/a Gary L. Neal, Appellee.

BAP No. SC–89–1380–VJAs.
Bankruptcy No. 87–08793–H7.
Adv. No. C88–0109–H7.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Oct. 18, 1989.

Decided May 9, 1990.

Jerry Michael Suppa, San Diego, Cal., for Aetna Finance Co., et al., appellant.

Gary Lawrence Neal, Escondido, Cal., in pro per.

Before VOLINN, JONES and ASHLAND, Bankruptcy Judges.

## OPINION

VOLINN, Bankruptcy Judge:

### FACTUAL AND PROCEDURAL BACKGROUND

On November 5, 1987, the debtor borrowed $2,390.75 from the appellant Aetna Finance Company, dba ITT Financial Services ("ITT"). Twenty-nine days later the debtor filed the petition in this bankruptcy case. ITT filed a timely complaint objecting to discharge under 11 U.S.C. § 523(a)(2)(C),[1] implicitly alleging that the

---

1. Section references refer to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, unless otherwise specified. Section 523 reads in pertinent part:

   (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does

not discharge an individual debtor from any debt—

   .   .   .   .   .

   (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

   (A) false pretenses, a false representation, or actual fraud, other than a statement re-

debtor used the loan proceeds to purchase luxury goods or services. The debtor has not challenged that implicit allegation.

Without taking evidence or making findings of fact, the bankruptcy court dismissed the complaint on the legal basis that § 523(a)(2)(C) does not apply to "loans of cash." ITT has not objected to the characterization of the underlying transaction as a loan of cash. We AFFIRM.

## ISSUE

Section 523(a)(2)(C) provides that consumer debts exceeding $500 for "luxury goods or services" incurred by a debtor within 40 days before the order for relief are presumed to be excepted from discharge. ITT did not plead in its complaint any basis for relief other than the § 523(a)(2)(C) presumption, nor did ITT raise any other issue on this appeal. Thus the sole issue before us is whether § 523(a)(2)(C) applies to loans of cash made within 40 days before the petition date if the proceeds are used to purchase luxury goods.

## STANDARD OF REVIEW

The ruling appealed from was made solely on legal grounds, the court having taken no evidence and made no findings of fact. The issue raised in this appeal is therefore purely a question of law, which we review *de novo*. *In re Wolf & Vine*, 825 F.2d 197, 199 (9th Cir.1987).

## DISCUSSION

A. *Statutory Language and Legislative History*

■ "Exceptions to discharge must be plainly expressed, and are strictly construed in favor of the debtor." *In re Linn*, 38 B.R. 762, 763 (9th Cir. BAP 1984) (citations omitted); *accord In re Klapp*, 706 F.2d 998, 999 (9th Cir.1983). The applicable statutory language on its face appears to include debts incurred as the actual purchase price for luxury goods or services, but not debts based on loans of cash. Section 101 defines "debt" as "liability on a claim," and "claim" as "right to payment." Thus the language of § 523(a)(2)(C), "debts ... for 'luxury goods or services,'" appears to refer to a vendor's right to payment for luxury goods or services sold to the debtor, rather than to a lender's right to repayment of a cash loan.

This interpretation is consistent with the legislative history. A pre-enactment version of § 523(a)(2)(C) applied the presumption of nondischargeability to *any* debt incurred by the debtor within 40 days before the petition, except debts incurred for necessities.[2] S.Rep. No. 65, 98th Cong., 1st Sess. 58 (1983). Legislative history pertaining to that version states that the purpose of the section was to

> address a type of unconscionable or fraudulent debtor conduct not heretofore considered by the code—that of loading up. In many instances, a debtor will go on a credit buying spree in contemplation of bankruptcy.

S.Rep. No. 65, 98th Cong., 1st Sess. 58 (1983). The final version of the statute, however, specifically limits the nondischargeability presumption to debts "for 'luxury goods or services.'" Thus Congress appears to have deliberately narrowed the discharge exception by a "bright line" dependent on the consideration for a particular debt being luxury goods or services. Pragmatically, it may be that Con-

---

specting the debtor's or an insider's financial condition;

    .    .    .    .

(C) for purposes of subparagraph (A) of this paragraph, consumer debts owed to a single creditor and aggregating more than $500 for "luxury goods or services" incurred by an individual debtor on or within forty days before the order for relief under this title ... are presumed to be nondischargeable; "luxury goods or services" do not include goods or services reasonably acquired for the

support or maintenance of the debtor or a dependent of the debtor....

**2.** The pre-enactment version of § 523(a)(2)(C) reads in pertinent part:

(d) For purposes of subsection (a)(2) of this section, any debt which was incurred on or within forty days before the date of the filing of a petition under this title is presumed to be nondischargeable....

S. 445, 98th Cong., 1st Sess. § 209 (1983).

gress did not intend to include cash loans because tracing loan proceeds to luxury goods would involve a more difficult factual determination. This does not leave cash lenders at the mercy of unscrupulous borrowers who abuse credit in anticipation of bankruptcy; fraudulent diversion of loan proceeds from a stated or restricted purpose would still be subject to litigation and proof under § 523(a)(2)(A).

In any event, whether or not taken in view of the legislative history, the language of § 523(a)(2)(C) does not plainly express a discharge exception for cash loans, even if the proceeds are used to purchase luxury goods or services. Since discharge exceptions must be strictly construed in favor of the debtor, § 523(a)(2)(C) cannot be construed to include cash loans.

### B. Case Law

ITT argues that § 523(a)(2)(C) should apply to cash loans when the proceeds are used to purchase luxury goods or services, and cites four reported cases on this point: *In re Claar,* 72 B.R. 319 (Bankr.M.D.Fla. 1987); *In re Woods,* 66 B.R. 984 (Bankr.E. D.Pa.1986); *In re Hussey,* 59 B.R. 573 (Bankr.M.D.Ala.1986); and *In re Smith,* 54 B.R. 299 (Bankr.S.D.Iowa 1985). Each of these cases involved loans to the debtor within 40 days before the order for relief. *Hussey* and *Claar* support ITT's position that § 523(a)(2)(C) does apply to loans whose proceeds are used to purchase luxury goods, while *Smith* and *Woods* hold that loans of cash do not fall within the "luxury goods" presumption of § 523(a)(2)(C).

In *Smith,* the debtor had used all but $85 of the loan proceeds to refinance previous loans from the same lender. 54 B.R. at 300, 302. The court ruled that refinancing of pre-existing debt was not "luxury goods or services" within the meaning of § 523(a)(2)(C). *Id.* The court also noted that the amount of the new advance ($85) was substantially less than the minimum amount necessary to trigger § 523(a)(2)(C). Further, given the minimal amount of the new advance, the facts before the court did not invoke the Senate's concerns regarding "loading up." *Id.* at 303.

In *Woods* the court stated generally that because cash is not a good or a service, § 523(a)(2)(C) does not apply to loans of cash. *Woods,* 66 B.R. at 989. The court explicitly reserved judgement on the issue raised here, however, observing that

> the Debtor testified that he did not use the cash to purchase luxury goods or services, *which might present a close case,* and there is absolutely *no evidence* to the contrary.

66 B.R. at 989 (emphasis added).

In both *Claar* and *Hussey,* the debtor had used the loan proceeds to purchase luxury goods or services (a life membership in Jim and Tammy Bakker's Heritage USA campground, and a recreational three-wheeler, respectively). *Claar,* 72 B.R. at 321; *Hussey,* 59 B.R. at 575. In *Claar* the court found that the debtor had "used" the proceeds to purchase the luxury goods or services, 72 B.R. at 321, and in *Hussey* the court found that the debtor borrowed funds "for the purpose of" purchasing luxury goods, 59 B.R. at 575. Based on those findings, both courts concluded that the related debts fell within the presumption of § 523(a)(2)(C).

██ We respectfully disagree with the conclusions reached by the courts in *Claar* and *Hussey.* Exceptions to discharge are to be narrowly construed in favor of the debtor. *In re Klapp,* 706 F.2d 998, 999 (9th Cir.1983); *In re Stephens,* 51 B.R. 591, 595 (9th Cir. BAP 1985); *In re Linn,* 38 B.R. 762, 763 (9th Cir. BAP 1984). The limiting language of § 523(a)(2)(C), "debts ... for 'luxury goods or services,'" refers to the nature of the debt and the transaction giving rise to it, not to the debtor's intent or actions subsequent to the original transaction. Applying § 523(a)(2)(C) to debts for cash loans whose proceeds can be traced to luxury goods or services would require a broad construction of the statutory language, contrary to the public policy of narrowly construing exceptions from discharge. We hold that § 523(a)(2)(C) includes only debts whose consideration was the sale to the debtor of "luxury goods or services," and excludes loans of unrestricted cash, as the *Woods* court generally recognized.

Here, ITT loaned the debtor unrestricted cash, which the debtor was free to use for any purpose. In the language of § 523(a)(2)(C), the debt is owed for cash, not "for 'luxury goods or services.'" That the debtor sought the loan for the purpose of purchasing luxury goods or services, or chose to spend the loan proceeds in that manner, does not change the essential nature of the debt. Such a debt is not subject to the § 523(a)(2)(C) exception to discharge.

This holding is consistent with both *In re Koch*, 83 B.R. 898 (Bankr.E.D.Pa.1988), and *In re Davis*, 56 B.R. 120 (Bankr.D. Mont.1985). In each of those cases, the luxury goods clause of § 523(a)(2)(C) was applied to debts owed to lenders who loaned the debtor the purchase price of goods purchased from a third-party vendor. *Koch* at 899–900, 903–04; *Davis* at 121–22. In each case, however, the loan and the purchase were parts of a single transaction in which the loan proceeds were paid directly to the vendor, and the only consideration the debtor received on account of the debt was the goods in question.[3] *Koch* at 899–901, 903; *Davis* at 121. Thus to the extent the purchased goods were "luxury goods," the debts were "for 'luxury goods or services.'" The debtor here received unrestricted cash from ITT, giving rise to a debt for cash, not a debt for luxury goods or services.

### CONCLUSION

The court below correctly concluded that debts arising from loans of cash are not "debts ... for 'luxury goods or services'" and therefore are not within the § 523(a)(2)(C) presumption of nondischargeability. Because ITT's claims were based solely on that presumption, and ITT has not challenged the characterization of the underlying transaction as a loan of cash, the bankruptcy court's judgement is AFFIRMED.

---

**3.** In *Koch,* the court held that the goods purchased were luxury goods (the debtor did not challenge that element of § 523(a)(2)(C)), 83 B.R. at 902, while in *Davis* the court determined that the goods in question were not luxury goods, 56 B.R. at 122.