**In re Ricky TRIPLETT, Sr. and Sharlene Triplett, Debtors.**

**LORAIN COUNTY BANK, Plaintiff,**

v.

**Ricky TRIPLETT, Sr. and Sharlene Triplett, Defendants.**

**Bankruptcy No. 89–0286.**
**Related No. 89–01681.**

United States Bankruptcy Court,
N.D. Ohio, W.D.

March 11, 1992.

M. Colette Gibbons, Frederic P. Schwieg, Cleveland, Ohio, for plaintiff.

Gregory A. McDowell, Willard, Ohio, for defendants.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after Trial on the Complaint to Determine Dischargeability of Debt. At the Trial, the parties were afforded the opportunity to present the evidence and arguments they wished the Court to consider in reaching its decision. The Court has reviewed the testimony, the documents admitted at Trial, and the arguments of counsel, as well as the entire record in this case. Based upon that review, and for the following reasons, the Court finds that the debt owed to the Plaintiff should not be discharged.

## FACTS

On May 31, 1989, Ricky and Sharlene Triplett, Debtors/Defendants, purchased a 1989 Chevrolet Beretta [hereinafter "Beretta"]. This purchase was financed through the Lorain County Bank [hereinafter "LCB"], Plaintiff. The Debtors granted the Plaintiff a security interest in the Beretta in exchange for the financing. At the time of the purchase, the Debtors also owned four other automobiles: a 1989 Chevy Geo; a 1989 Chevy S–10 pickup truck; a 1980 Dodge Omni; and a 1989 Ford Aerostar Van. The Tripletts traded in the Chevy S–10 pickup truck on the purchase of the Beretta.

On June 15, 1989, the Debtors filed for relief under Chapter 7 of the Bankruptcy Code. On September 20, 1989, LCB contacted the Debtors. The Debtors informed LCB that they were in an accident involving the Beretta and that was why the Debtors had stopped making payments on the loan. The Debtors also informed LCB that they had filed a Bankruptcy petition. LCB subsequently repossessed the Beretta and sold it.

LCB filed a Complaint alleging that the debt owed to it should be nondischargeable under Section 523(a)(2)(C) of the Bankruptcy Code. LCB sought to obtain the deficiency resulting from the repossession sale, since proceeds were insufficient to pay the balance due on the loan. Prior to Trial, LCB filed an Amended Complaint, alleging that the Debtors induced LCB to make the loan by making false representations. LCB also sought to recover the insurance proceeds from the automobile accident.

The Debtors contended that the purchase was not a luxury good, and therefore, the debt should be dischargeable. The Debtors alleged that the other cars they owned were unreliable, and so the purchase of the Beretta was a necessary one. The Debtors' Motion to Dismiss both the original Complaint and the Amended Complaint was denied at Trial.

The parties entered into the following stipulations:

1. That the debt incurred was a consumer debt;

2. That the debt was owed to a single creditor, to wit, LCB;

3. That the debt was incurred by individual debtors; and

4. That the debt was incurred within forty days of the order for relief.

Therefore, only two issues were to be resolved by the Court: (1) whether the Debtors made false representations in order to obtain the loan; and (2) whether the Beretta constitutes a luxury good.

## LAW

LCB sought to have its loan declared nondischargeable under Section 523 of the Bankruptcy Code. That Section provides, in pertinent part, that:

> (a) A discharge ... does not discharge an individual debtor from any debt—
>
> (2) for money, property, services ... to the extent obtained by—
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's ... financial condition; [or]
>
> (C) for purposes of subparagraph (A) of this paragraph, consumer debts owed to a single creditor and aggregating more that $500 for "luxury goods or services" incurred by an individual debtor on or within forty days before the order for relief under this title ... are presumed to be nondischargeable; "luxury goods or services" do not include goods or services reasonably acquired for the support or maintenance of the debtor or a dependent of the debtor....

11 U.S.C. § 523(a)(2)(A) and (C).

The Sixth Circuit Court of Appeals has announced criteria which the Creditor must meet to be successful on its claim under Section 523(a)(2)(A) of the Bankruptcy Code. The Creditor must prove: (1) that the Debtors made false representations; (2) that at the time made, the Debtors knew them to be false; (3) that the representations were made with the intention and purpose of deceiving the Creditor; (4) that the Creditor reasonably relied on the representations; and (5) that the creditor sustained the alleged injury as a proximate result of the representation having been made. *In re Phillips*, 804 F.2d 930, 932 (6th Cir.1986); *In re Martin*, 761 F.2d 1163, 1165 (6th Cir.1985).

▮ The Court finds that the Debtors did not make a false representation in failing to include all of their debts. A review of the loan application reflects that the application only requests the applicant to list credit references or installment obligations. There was no request to include *all* financial obligations. If there was no such request, then failure to list all debts cannot be interpreted as a false representation.

▮ Even if the failure to list all of the financial obligations could be interpreted as a false representation based upon these facts, the Court finds that LCB did not rely upon the application in approving the loan. Wancho testified that he did not rely upon the loan application when he approved the loan. He testified that he ran a credit check and relied upon the credit bureau report, instead. A credit bureau report cannot amount to a financial statement provided by the debtors, as required by the Bankruptcy Code.

This Court is of the opinion that Section 523(a)(2)(A) does not apply to the facts at hand. Rather, this Court believes that the Debtors' conduct falls within the realm of Section 523(a)(2)(C).

▮ To succeed in its claim under Section 523(a)(2)(C), LCB must demonstrate that (1) a consumer debt, as defined in Section 101(7); (2) owed to a single creditor; (3) aggregating more than Five Hundred Dollars ($500.00); (4) for luxury goods or services; (5) incurred by an individual debtor; (6) on or within forty days before the order for relief. *In re Koch*, 83 B.R. 898 (E.D.Pa.1988); *In re Blackburn*, 68 B.R. 870 (N.D.Ind.1987). The standard of proof is a preponderance of the evidence. *Grogan v. Garner*, — U.S. —, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). The parties stipulated to all of the elements except as to whether the automobile constituted a luxury good.

Debtors' counsel argued that LCB must satisfy subsection (A) before proceeding to subsection (C) in order to have its debt declared nondischargeable. This Court believes that counsel has misread the statute. Subsection (C) only creates a presumption of fraud in favor of the creditor and is to be used to prevent "the perceived practice

of 'loading up' by certain debtors: 'loading up' refers to purchasing items on the eve of bankruptcy with the intention of exempting such items and not paying for them." *In re Koch*, 83 B.R. 898, 901 (E.D.Pa.1988). *See also, Matter of Smith*, 54 B.R. 299 (S.D.Iowa 1985). "The burden is upon the debtor to demonstrate that the debt was not incurred in contemplation of discharge in bankruptcy and thus a fraudulent debt." S.Rep. No. 98–65, 98th Cong. 1st Sess. 58 (1983).

Ricky Triplett testified that he purchased the Beretta because he had to drive over Forty (40) miles to work one way and that the other vehicles owned by the Debtors were not reliable enough for him to depend upon to get to work every day. He further testified that he bought a very basic model, rather than a "souped up" model. The Debtor testified that he first contacted an attorney concerning bankruptcy on April 15, 1989. He stated that he had signed his wife's name on some of the loan documents, with her permission, as he knew he needed a co-signer on the loan for it to be approved.

Dale Kutting [hereinafter "Kutting"], an LCB employee in the Collections Department, testified that the Debtors made a payment on their loan on July 10, 1989. Kutting further testified that no further payments were forthcoming from the Debtors. However, money was applied to the account on November 21, 1989, when the extended service warranty was cancelled. Kutting testified that LCB repossessed the Beretta on January 12, 1990, due to the account having fallen into default. He stated that the automobile was sold to the highest bidder on March 16, 1990, for Six Thousand Five Hundred Dollars ($6,500.00). The Beretta was insured through the Debtor. Kutting testified that, to date, the Debtors had not relinquished the insurance proceeds check from the accident.

Chris Wancho [hereinafter "Wancho"], an Assistant Loan Officer at LCB, testified that he did not rely on the loan application in approving the loan. He testified that he did a credit check which revealed creditors other than those listed on the application. Despite this, he approved the loan because the Debtors were selling the Chevy S–10 Truck and the Beretta payments would take the place of the Chevy S–10 payments.

The Court finds that the Debtors did not sufficiently demonstrate that the purchase of the Beretta was not in contemplation of bankruptcy. They contacted an attorney to discuss bankruptcy in April 1989. They purchased the Beretta in May 1989. Approximately ten (10) days later, they filed for Bankruptcy. They didn't make a June payment. A review of the file reflects that their July payment was nine (9) days late and that they made no further payments. The testimony reflects that the Tripletts made no attempt to contact LCB to discuss the future of their loan or their failure to make payments. A review of the Debtors' petition and schedules revealed that the Debtors did not list the Beretta at all. The automobile was conspicuously absent from the Debtors' A–2 Schedules, B–2 Schedules, and Statement of Intention. The Court is at a loss to understand this omission as the automobile was purchased nine (9) days prior to filing. Additionally, the Debtor testified that the purchase of the Beretta was made because the other vehicles were unreliable. The schedule of intentions reflects, however, that the Debtors were keeping two of the "unreliable vehicles." Ricky Triplett testified that he had to have a co-signer on the loan because he knew that he would not get the loan without one. Under the circumstances, the Court has no alternative but to conclude that the Debtors knew they were insolvent at the time of the purchase, yet they made the purchase in contemplation of avoiding payment by filing the petition in bankruptcy.

■ The Court, having found that the Debtors could not overcome the presumption of fraud, now directs its attention to the issue of whether the Beretta was a luxury good. The term "luxury goods or services" is not defined in the Code. Consequently, the Court must look to the circumstances surrounding the purchase of the Beretta to determine whether it should be classified as a luxury item.

The record reflects that the purchase price of the Beretta was Seventeen Thousand One Hundred Fifty-seven Dollars and Nineteen Cents ($17,157.19). The Debtors traded in a 1989 Chevy S–10 Truck, which did not reduce their purchase price. Wancho testified that he would not have made the loan had the Debtors not traded-in the Chevy S–10, as their indebtedness would have been tremendous. They also made a One Thousand Dollar ($1,000.00) cash down payment. An extended service contract was purchased.

When the purchase was completed, the Debtors owned four (4) vehicles. No testimony was presented to indicate that the Debtors were attempting to rid themselves of the alleged unreliable vehicles. The Ohio legislature, in exempting from execution one automobile, has expressed its belief that an automobile is necessary for a fresh start. Therefore, it is conceivable that more than one automobile would be a luxury, as in this case.

The Court notes that the Beretta was a new automobile. This tends to indicate that the Debtors did not approach this purchase with any degree of financial responsibility. It appears that they purchased a new, expensive automobile on the eve of bankruptcy, with the hope that the debt would be discharged.

As to damages, the record reflects that the Beretta was purchased for Seventeen Thousand One Hundred Fifty-seven Dollars and Nineteen Cents ($17,157.19). Testimony at Trial revealed that the Debtors owed Sixteen Thousand Four Hundred Seventy-four Dollars and Sixteen Cents ($16,474.16), due to the fact that the Debtors had made one payment of Three Hundred Sixty-nine Dollars and Eighty-three Cents ($369.83), and that One Thousand Four Hundred Eleven Dollars and Forty Cents ($1,411.40) was credited to their account. Interest had been accruing at Thirteen and a half Percent (13.50%) during the life of the loan. The Beretta was ultimately sold after repossession for Six Thousand Five Hundred Dollars ($6,500.00). LCB incurred expenses of Thirteen Dollars ($13.00) in the sale of the automobile. Consequently, LCB is entitled to Nine Thousand Nine Hundred Eighty-seven Dollars and Sixteen Cents ($9,987.16).

As to the insurance proceeds check, LCB is entitled to those proceeds. LCB was a secured creditor and as such should be entitled to the proceeds from the damage to the collateral. The Debtors should turn over that check and it should be used to mitigate LCB's damages.

In judging the credibility of the witnesses, the Court has taken into consideration the witnesses' intelligence, age, memory, demeanor while testifying, the reasonableness of the testimony in light of all the evidence in the case, and any interest, bias, or prejudice the witnesses may have. In reaching the conclusions found herein, the Court has considered all of the evidence and arguments of counsel, regardless of whether they are specifically mentioned in this opinion.

Accordingly, it is

ORDERED that the Debt owed to the Lorain County Bank in the amount of Nine Thousand Nine Hundred Eighty-seven Dollars and Sixteen Cents ($9,987.16) be, and is hereby, declared nondischargeable.

It is FURTHER ORDERED that within Twenty-one (21) days from the date of this Order, the Debtors remit the insurance proceeds check to the Lorain County Bank in order to mitigate the damages.

It is FURTHER ORDERED that the Debtors report to the Court within Twenty-one (21) days from the date of this Order as to their compliance with this Order.