In re Gerald A. D'AMBOISE and Mary D'Amboise, Debtors.

Brewer Federal Credit Union, Plaintiff,

v.

Gerald A. D'Amboise, and Mary D'Amboise, Defendants.

Bankruptcy No. 98–12106.
Adversary No. 99–1012.

United States Bankruptcy Court, D. Maine.

April 13, 1999.

of the pleadings is deferential to the plaintiff, I "['']need not credit[']" the "[']complaint's 'bald assertions' or legal conclusions.[']" *Abbott v. United States,* 144 F.3d 1, 2 (1st Cir.1998) (quoting *Shaw v. Digital Equip. Corp.,* 82 F.3d 1194, 1216 (1st Cir.1996)).

### B. Factual Allegations

Gerald D'Amboise entered into an unsecured loan agreement with BFCU on October 15, 1998. Per the terms of the *pro forma* "Closed End Note, Disclosure and Security Agreement," the BFCU agreed to loan Gerald $2000 at 12.5% interest. One payment for $2061.64, the entire principal, plus accrued interest of $61.64, was due on January 13, 1999, 90 days from the date of the loan.

On the same day he obtained the loan proceeds, Gerald wrote a check for $2150 to Doug Libby to purchase a used truck.

The D'Amboises filed their Chapter 7 petition on November 27, 1998, forty-three days after taking out the loan.

### C. The Law

The BFCU complaint rides on two subparagraphs of § 523(a)(2). Section § 523(a)(2)(A) excepts from discharge any debt,

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

§ 523(a)(2)(A). Section § 523(a)(2)(C) tweaks subparagraph (A). As germane to the present dispute, it reads:

(C) for purposes of subparagraph (A) of this paragraph, consumer debts owed to a single creditor and aggregating more than $1075 for "luxury goods or

Martha A. Broderick, Lincoln, ME, for plaintiff.

Jon A. Haddow, Farrell, Rosenblatt & Russell, Bangor, ME, for defendants.

### MEMORANDUM OF DECISION

JAMES B. HAINES, Jr., Chief Judge.

Debtors Gerald and Mary D'Amboise have moved to dismiss Brewer Federal Credit Union's complaint seeking a determination that their debt to BFCU is excepted from discharge pursuant to § 523(a)(2)(C). Because the obligation in question is entirely outside the ambit of § 523(a)(2)(C), I will grant the motion to dismiss.[1]

### Discussion

#### A. Motion to Dismiss Standard

The D'Amboises' dismissal motion is brought under Federal Rule of Bankruptcy Procedure 7012, which incorporates Federal Rule of Civil Procedure 12(b)–(h).

I must accept the factual averments in BFCU's complaint as true and will indulge all reasonable inferences that assist BFCU's case. *See Fidler v. Central Coop. Bank (In re Fidler),* 226 B.R. 734, 736 (Bankr.D.Mass.1998); *see also El Dia, Inc. v. Rossello,* 165 F.3d 106, 108 (1st Cir. 1999) (same standard for *de novo* appellate review of order on motion to dismiss). The D'Amboises' motion will be granted only if it is clear that, under the facts alleged, BFCU cannot prevail on any viable § 523(a)(2)(C) theory. *See In re Fidler,* 226 B.R. at 736. Though my review

1. This memorandum sets forth my conclusions of law. Unless otherwise indicated, all citations to statutory sections are to the Bankruptcy Reform Act of 1978 ("Bankruptcy Code" or "Code"), as amended, 11 U.S.C. § 101, *et seq.*

services" incurred by an individual debtor on or within 60 days before the order for relief under this title . . . are presumed to be nondischargeable; "luxury goods or services" do not include goods or services reasonably acquired for the support or maintenance of the debtor or a dependent of the debtor[.]

§ 523(a)(2)(C). BFCU must plead, and ultimately prove, that its loan transaction comes within the nondischargeability presumption created by § 523(a)(2)(C). *See Chase Manhattan Bank USA, N.A. v. Poor (In re Poor)*, 219 B.R. 332, 335 (Bankr.D.Me.1998).[2]

The credit union argues that the proceeds of its loan went to the purchase of a truck, the debtors' second truck, within sixty days of bankruptcy. It claims it can show that the truck qualifies as a "luxury good," and, therefore, that subsection (C)'s presumption applies.

The D'Amboises argue that even if the truck were a luxury good within the meaning of the statute, the presumption does not apply because the loan in question was an unrestricted cash loan, rather than an obligation arising as a result of a luxury goods purchase within the sixty day presumption period.

*Aetna Finance Co. v. Neal (In re Neal)*, 113 B.R. 607 (9th Cir. BAP 1990) is directly on point. The *In re Neal* debtor borrowed $2390.75 in cash just twenty-nine days before filing bankruptcy. The creditor argued that § 523(a)(2)(C)'s presumption would apply if the debtor used the loan proceeds to purchase "luxury goods or services." The panel observed that the "statutory language on its face appears to include debts incurred as the actual purchase price for luxury goods or services, but not debts based on loans of cash." *Id.* at 608 (examining the legislative history). Strictly construing the discharge exception in favor of the debtor, the panel concluded that "the language of § 523(a)(2)(C) does not plainly express a discharge exception for cash loans, even if the proceeds are used to purchase luxury goods or services." *Id.* at 609. *See also Beneficial of Missouri, Inc. v. Shurbier (In re Shurbier)*, 134 B.R. 922, 926–27 (Bankr.W.D.Mo. 1991) (debtor's use of the proceeds of an unsolicited cash loan to purchase goods and services not fodder for a § 523(a)(2)(C) presumption because it was "a one time cash loan, not indebtedness for goods or services").

I agree with *In re Neal*'s reasoning and conclusion. *Neal*'s correctness is reinforced by comparing § 523(a)(2)(C) with § 523(a)(14). The latter provision excepts from discharge debts "incurred to pay a tax to the United States that would be nondischargeable pursuant to [§ 523(a) ](1)." § 523(a)(14). Had Congress intended that § 523(a)(2)(C)'s presumption apply whenever a creditor could trace its loan proceeds to a debtor's purchase of luxury goods within sixty days of bankruptcy, it could have provided that the presumption applied to debts "incurred to purchase luxury goods" or employed other, appropriate language. It did not do so.[3]

---

**2.** BFCU relies solely on subparagraph (C) in its complaint and in its response to the D'Amboises' motion to dismiss. There is no related § 523(a)(2)(A) count. Thus, if its entitlement to the presumption falls, its complaint fails.

**3.** In response to the D'Amboises' motion to dismiss, BFCU's attorney asserted that it is relying on "the 1st Circuit's interpretation of 11 U.S.C. § 523(a)(2)(c) which does not follow the 9th Circuits's interpretation in *Re Neal*, 113 B.R. 607, 609 (9th Cir. BAP 1990)." Although there are a few cases that predate *In re Neal* and that reach a contrary result, they are from lower courts in other circuits. *See In re Neal*, 113 B.R. at 609. BFCU's counsel has not cited a single authority in support of the proposition that the law in this circuit is contrary to *In re Neal*. My independent research has revealed no such authority. BFCU's argument appears to be a reckless one, unwarranted by existing law. Taken together with BFCU's sloppy pleadings and written submissions, grounds for sanctioning counsel may exist. An order to show cause will issue pursuant to Federal Rule of Bankruptcy Procedure 9011(c).

Thus, I conclude that BFCU "is trying to fit a square peg into a round hole." *In re Shurbier,* 134 B.R. at 926.[4] Its end must remain unaccomplished.

### Conclusion

Under the facts alleged in its complaint, BFCU cannot recover on any viable § 523(a)(2)(C) theory. The debtors' motion to dismiss will be granted. A separate order will issue forthwith.

---

**4.** Though few courts have addressed the issue before me in writing, many have applied the § 523(a)(2)(C) presumption in circumstances where the plaintiff's peg is round. *See, e.g., Sears, Roebuck & Co. v. Hernandez (In re Hernandez),* 208 B.R. 872, 880–82 (Bankr. W.D.Tex.1997) (debtors' purchases of luxury items from plaintiff, "effectively refurbish[ing] their home at a time when they knew bankruptcy was imminent," "were made in the exact manner that Congress designed § 523(a)(2)(C) to proscribe"); *Lorain County Bank v. Triplett (In re Triplett),* 139 B.R. 687 (Bankr.N.D.Ohio 1992) (bank that financed the debtors' purchase of a fourth vehicle through a purchase price secured loan entitled to the § 523(a)(2)(C) presumption); *Norwest Fin. Consumer Discount Co. v. Koch (In re Koch),* 83 B.R. 898 (Bankr.E.D.Pa.1988) (creditor providing open-end financing through a retailer entitled to § 523(a)(2)(C) presumption vis-a-vis debtor's debt for the purchase of audio/video equipment).