In re Lionel Marcus **FERRELL** and Eugenia Ferrell, Debtors.

**NISSAN MOTOR ACCEPTANCE CORP., Plaintiff,**

v.

**Lionel Marcus FERRELL, et al., Defendants.**

**Bankruptcy No. 95–3361.
No. 95–32148.**

United States Bankruptcy Court, N.D. Ohio, Western Division.

Nov. 13, 1996.

William J. Peters, Toledo, OH, for Defendants.

Phyllis A. Ulrich, Cleveland, OH, for Plaintiff.

## MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court upon the Complaint to Determine Dischargeability and Motion for Summary Judgment filed by Plaintiff Nissan Motor Acceptance Corp., and upon the Response of the Defendant Debtor. This Court has reviewed the arguments of counsel, exhibits, as well as the entire record of the case. Based upon that review, and for the following reasons, the Plaintiff's Motion for Summary Judgment shall be denied.

## FACTS

Defendants entered into a contract with Plaintiff to purchase a 1991 Saab 9000 (hereafter the "Saab") on or about June 26, 1995, wherein the Defendants agreed to pay the sum of Nineteen Thousand Two Hundred Eighty-six and 75/100 Dollars ($19,286.75) in forty-eight (48) monthly installments of Five Hundred five and 55/100 Dollars ($505.55) beginning August 10, 1995. The contract also shows that a car was traded in for the Saab, and that the payoff balance on the trade-in was Sixteen Thousand Five Hundred Twenty-five Dollars ($16,525.00). Thus, the Defendants incurred an additional Two Thousand Seven Hundred Sixty-one and 75/100 Dollars ($2,761.75) of debt when they purchased the Saab.

In relation to this contract, Defendant Eugenia Ferrell (hereafter "Mrs. Ferrell") partially completed a credit application. Mrs. Ferrell left blank the spaces provided for trade or occupation, name of previous employer, address, and number of years, but did indicate that her gross monthly salary was One Thousand One Hundred Sixty Dollars ($1,160.00), or approximately Thirteen Thousand Nine Hundred Twenty Dollars ($13,920.00) annually. The credit application also had a space labeled "last car financed," and corresponding blanks for the creditor's name, address, the balance due and the monthly payments. Mrs. Ferrell wrote "Summit Eagle" and gave an indication as to the lender, but left blank spaces provided for the balance and payments. The credit application also provided spaces for credit references or installment obligations, and indicated that the applicant should include finance companies, banks credit cards, charge accounts. Mrs. Ferrell left these spaces blank as well. The credit application also provided for the applicant to sign a space authorizing a credit and employment investigation, which Mrs. Ferrell signed. Plaintiff has not stated or shown whether or not they actually did do a credit check.

It appears that at the time the Defendants entered into the contract with Plaintiff they were living in Florida. In their Response to the Plaintiff's Motion for Summary Judgment, the Defendants claim that while in

Florida at the time the contract was entered into, the Defendant Marcus Ferrell (hereafter "Mr. Ferrell") worked as an Evidence Technician with the police department in St. Petersburg, Florida. Mrs. Ferrell worked at Macdill Federal Credit Union as a Member Service Representative. Prior to the purchase of the Saab, Defendants state that they had three vehicles, a 1994 Ford Thunderbird driven mostly by Mr. Ferrell, a 1992 Jeep Eagle Summit which was driven mostly by Mrs. Ferrell, and a 1991 Mitsubishi driven mostly by Mr. Ferrell's mother, Linda Ramey. Regarding the latter, Defendants state in their Response that Ms. Ramey had persuaded the Defendants to allow her to use their credit by purchasing the Mitsubishi in their name, and that she would make the payments. The Defendants state that the arraignment was short–lived because Ms. Ramey started to have problems making the payments shortly after the arrangement was begun. The Defendants have attached no exhibits with their Response to verify any factual claim in their Response.

The Defendants do not explain why, but state that Mr. Ferrell began to look for another car to replace the 1994 Thunderbird, and came upon the Saab at a dealership in St. Petersburg. They claim that the dealer told them that they did not have to list all their creditors on the credit application because Plaintiff would do a credit check. Defendants state that at the time they had outstanding debts with Barnett Bank for the Mitsubishi, Commercial Federal Mortgage Corporation for their real property, W.S. Badcock Corporation for the household furniture, and Sears. Defendants claim that they incurred further debt with Chrysler Credit Corporation for the Eagle Summit after the contract for the purchase of the Saab. However, the bankruptcy schedules show that this debt was incurred on June 24, 1995, two days prior to the Saab contract. This debt is listed at Eighteen Thousand One Hundred Dollars ($18,100.00).

Defendants claim that shortly after the purchase of the Saab, Mr. Ferrell lost his job, and the couple moved to Lima, Ohio, where they had relatives who could assist them in getting employment. Mrs. Ferrell got a job at Bank One in Lima. Defendants claim that Mr. Ferrell did not get a job immediately, and their debts became overwhelming. They filed their Chapter 7 Bankruptcy Petition on August 28, 1995. The Defendants turned over the Saab to Plaintiff, and it was subsequently sold. The proceeds of the sale were Nine Thousand One Hundred Dollars ($9,100.00) leaving an outstanding balance on their debt to Plaintiff in the amount of Twelve Thousand Two Hundred Eight and 33/100 Dollars ($12,208.33).

Defendants' bankruptcy schedules show that Mrs. Ferrell's gross wages at the time of the filing of the petition are Eight Hundred Sixty–five Dollars ($865.00) per month, or Ten Thousand Three Hundred Eighty Dollars ($10,380.00) annually. The statement of financial affairs shows that Mrs. Ferrell received income from employment in the amount of Seven Thousand Forty–six and 80/100 Dollars ($7,046.80) in 1993 and Seven Thousand One Hundred Sixty–four and 43/100 Dollars ($7,164.43) in 1994. Mr. Ferrell received income from employment in the amount of Seventeen Thousand Seven Hundred Twenty–four and 63/100 Dollars ($17,724.63) in 1993, and the same in 1994. Mr. Ferrell also received Nine Thousand Dollars ($9,000.00) as a veteran of the armed forces in both 1993 and 1994. Further, this statement shows Mr. Ferrell was employed in 1995 prior to the petition date earning Twelve Thousand Three Hundred Thirty–one and 63/100 Dollars ($12,331.63), but that he was not employed on the petition date. The Defendants did not list the Eagle Summit on their bankruptcy schedules.

### LAW

The Bankruptcy Code, 11 U.S.C. § 101 et seq., provides in pertinent part:

**11 U.S.C. § 523. Exceptions to Discharge**

(a) A discharge under section 727, 1141, 1228[a] 1228(b), or 1328(b) of this section does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or in insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive; or

(C) for purposes of subparagraph (A) of this paragraph, consumer debts owed to a single creditor and aggregating more than $1000 for 'luxury goods or services' incurred by an individual debtor on or within 60 days before the order for relief under this title, or cash advances aggregating more than $1000 that are extensions of consumer credit under an open end credit plan obtained by an individual debtor on or within 60 days before the order for relief under this title, are presumed nondischargeable; 'luxury goods or services' do not include goods or services reasonably acquired for the support or maintenance of the debtor or a dependant of the debtor; and extension of consumer credit under an open end credit plan is to be defined for purposes of this subparagraph as it is defined in the Consumer Protection Act[.]

The Bankruptcy Rules provide in pertinent part:

**Rule 7056. Summary Judgment**

Rule 56 [of the Federal Rules of Civil Procedure] applies in adversary proceedings. The Federal Rules of Civil Procedure provide in pertinent part:

**Rule 56. Summary Judgment**

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions of file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

## DISCUSSION

Determinations concerning the dischargeability of a debt are core proceedings pursuant to 28 U.S.C. § 157. Thus, this case is a core proceeding.

In order for the Plaintiff to prevail on its Motion for Summary Judgment, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In order to prevail, the movant must demonstrate all elements of the cause of action. *R.E. Cruise, Inc. v. Bruggeman,* 508 F.2d 415, 416 (6th Cir.1975). Thereafter, the opposing party must set forth specific facts showing there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Inferences drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Matsushita v. Zenith Radio Corp.,* 475 U.S. 574, 586–588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). See also *In re Bell,* 181 B.R. 311 (Bankr.N.D.Ohio 1995).

Plaintiff alleges that the debt owed to it from the Defendants is nondischargeable under three separate theories which are codified in sections 523(a)(2)(A), 523(a)(2)(B) and 523(a)(2)(C) respectively. Each will be addressed in turn. Plaintiff's assertions that Defendants made misrepresentations per 523(a)(2)(A) and 523(a)(2)(B) are substantially the same. Summarized, they are that (1) Mrs. Ferrell never indicated the existence of other debts the Defendants owed to other creditors, including another vehicle the Defendants purchased just two days prior to entering into the contract in question, (2) that Mrs. Ferrell understated her income on her credit application, and (3) that the Defendants impliedly represented that they had the ability to repay Plaintiff.

For a debt to be determined non-dischargeable under § 523(a)(2)(A), the fol-

lowing elements must be shown: (1) that the debtor made false representations; (2) the debtor knew the representations to be false; (3) that the representations were made with the intention of deceiving the creditor; (4) that the creditor [justifiably] relied on the representations; and (5) that the creditor sustained the alleged injury as a proximate result of the representations having been made. *In re Phillips*, 804 F.2d 930, 932 (6th Cir.1986); *In re Martin*, 761 F.2d 1163, 1165 (6th Cir.1985). The standard for the creditor's reliance upon the debtor's false representation has recently been lowered by the Supreme Court from reasonable reliance to justifiable reliance. *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995). A preponderance of the evidence is the standard to be applied to dischargeability exceptions. *Grogan v. Garner*, 498 U.S. 279, 279–80, 111 S.Ct. 654, 655, 112 L.Ed.2d 755 (1991). If there is room for an inference of honest intent, the question must be resolved in favor of the debtor. *In Re Constantino*, 72 B.R. 231 (Bankr.N.D.Ohio 1987).

■ Without reaching the other elements, this Court concludes that to the extent that Plaintiff's allegations fall under the abient of 523(a)(2)(A), Plaintiff has not met its initial burden under the standards for summary judgment to show that it justifiably relied upon a false representation made by Defendants. The Supreme Court recently adopted the justifiable reliance standard in *Field v. Mans*, cited supra. The Court found that when Congress enacted § 523(a)(2)(A) they intended to adopt the common–law understanding of the term. 516 U.S. at ——, 116 S.Ct. at 443. The Court thoroughly discussed the common law meaning of the justifiable reliance standard:

> Then, as now, the most widely accepted distillation of the common law of tort was the Restatement (Second) of Torts (1976), published shortly before the Act. The section on point dealing with fraudulent misrepresentation states that both actual fraud and 'justifiable' reliance are required. *Id.* § 537. The Restatement expounds upon justifiable reliance by explaining that a person is justified in relying on a representation of fact 'although he

might have ascertained the falsity of the representation had he made an investigation.' *Id.*, § 540. Significantly for our purposes, the illustration is given of a seller of land who says it is free of encumbrances; according to the Restatement, a buyer's reliance on this factual representation is justifiable, even if he could have 'walk[ed] across the street to the office of the register of deed on the courthouse' and easily have learned of an unsatisfied mortgage. *Id.*, § 540, Illustration 1. The point is otherwise made in a later section noting that contributory negligence is no bar to recovery because fraudulent misrepresentation is an intentional tort. Here a contrast between a justifiable and reasonable reliance is clear; 'Although the plaintiff's reliance on the misrepresentation must be justifiable ... this does not mean that his conduct must conform to the standard of the reasonable man. Justification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than the application of a community standard of conduct to all cases.' *Id.* § 545A, Comment *b*. Justiciability is not without some limits, however. As a comment to § 541 explains, a person is

> 'required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation. Thus, if one induces another to buy a horse by representing it to be sound, the purchaser cannot recover even though the horse has but one eye, if the horse is shown to the purchaser before he buys it and the slightest inspection would have disclosed the defect. On the other had, the rule stated in the Section applies only when the recipient of the misrepresentation is capable of appreciating its falsity at the time by the use of his senses. Thus a defect that any experienced horseman would at once recognize at first glance may not be patent to a person who has no experience with horses.' *Id.*, § 541

A missing eye in a "sound" horse is one thing; long teeth in a "young" one, perhaps, another.

Similarly, the edition of Prosser's Law of Torts ... states that justifiable reliance is the standard applicable to a victim's conduct in cases of alleged misrepresentation and that '[i]t is only where, under the circumstances, the facts should be apparent to one of his knowledge and intelligence from a cursory glance, or he has discovered something which would serve as a warning that he is being deceived, that he is required to make an investigation of his own.' W. Prosser, Law of Torts § 108, p. 718 (4th ed.1971); accord. W. Keeton. D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 108 p. 752 (5th ed. 1984 (Prosser & Keeton)).

*Field v. Mans,* 516 U.S. at —— ——, 116 S.Ct. at 443–444.

It appears to this Court that the credit application was filled out in a cursory fashion without being taken home to obtain more specific information. A genuine issue of fact exists as to whether it was the parties' intention to have the application filled out in a cursory fashion, but to have the consent space signed so that a credit check could be conducted. If this is so, the only debt that could be considered to be omitted would have been the Summit Eagle, which was purchased two days earlier. However, Mrs. Ferrell did mention the Summit Eagle debt on the credit application. The fact that she did not fill in the amount of the monthly payments and the balance due on the Eagle Summit, or the credit references section which would include bank accounts that the Plaintiff should have assumed the Defendants to have had, could support either one of two inferences; either Mrs. Ferrell and Plaintiff did not intend Plaintiff to rely on the application but rather on a credit check, or Plaintiff unjustifiably relied upon the application which was so clearly incomplete. Either way, Plaintiff has failed to show upon summary judgment all the elements of an action under § 523(a)(2)(A).

■ Though the Supreme Court's opinion in *Field* makes it clear that a Plaintiff does not have a duty to investigate in many circumstances, it appears to this Court that when a credit application on its face would cause one with the experience and wisdom of the creditor to believe that further investigation is warranted, then the creditor cannot claim that he justifiably relied on the application in the absence of further investigation. That is, when there is such a glaring deficiency in the alleged misrepresentation, the creditor has then "discovered something which would serve as a warning that he is being deceived, that he is required to make an investigation of and his own." *Field,* —— U.S. at ——, 116 S.Ct. at 444, quoting W. Prosser, Law of Torts § 108, p. 718 (4th ed.1971).

The Plaintiff also points to the discrepancy between Mrs. Ferrell's income indicated on the credit application and the amount she shows as income from employment for 1993 and 1994 on her Statement of Financial Affairs. The income stated on the credit application was One Thousand One Hundred Sixty Dollars ($1,160.00) a month, equating Thirteen Thousand Nine Hundred Twenty Dollars ($13,920.00) a year. Mrs. Ferrell's 1993 and 1994 income was approximately Seven Thousand One Hundred Dollars ($7,100.00) respectively. Though a discrepancy exists which needs to be explained, it does not remove any issue of genuine fact for the purposes of summary judgment. The incomes listed on the Statement of Financial Affairs were from 1993 and 1994. The purchase of the Saab was not until 1995. It appears that Mrs. Ferrell's income increased in 1995, though not enough to completely cover the difference. Though the discrepancy is cause for concern, this Court cannot grant summary judgment on this basis alone, especially considering the incomplete nature of the credit application at issue in this case.

■ It is also important to note that the legislative history of § 523(a)(2) expressly states that, "Subparagraph (A) is mutually exclusive from subparagraph (B)." 124 Cong Rec H11095–96 (daily ed. Sept. 28, 1978); S17412 (daily ed. Oct. 6, 1978); remarks of Rep. Edwards and Sen DeConcini. Thus, to the extent that Plaintiff's cause of action under § 523(a)(2)(A) arises from the Mrs. Ferrell's credit application, Plaintiff must

proceed under the more rigorous reasonable reliance standard expressly found in § 523(a)(2)(B). See *Field,* 516 U.S. at ——, 116 S.Ct. at 442. Prior to *Field,* under Sixth Circuit precedent, the test for reliance was substantially the same under both §§ 523(a)(2)(A) and 523(a)(2)(B). See *In re Ledford,* 970 F.2d 1556, 1560 (6th Cir.1992). Now that the Supreme Court has pointed out that the test under § 523(a)(2)(A) is the less rigorous justifiable reliance test rather than the reasonable reliance test under § 523(a)(2)(B), the distinction between the applicability of the two sections will become more important. That is, following the *Field* decision, debtors could argue that allowing actions to be brought under § 523(a)(2)(A) which more properly fit into § 523(a)(2)(B) works an injustice around Congress's express provision in the latter for the reasonable reliance standard in circumstances delineated in § 523(a)(2)(B), and the legislative history supports this conclusion.

The distinction between the reliance standards in §§ 523(a)(2)(A) and 523(a)(2)(B) is perhaps most clear regarding the Sixth Circuit holding in *In re Ward,* 857 F.2d 1082, (6th Cir.1988), that a credit card issuer has not reasonable relied upon a misrepresentation of a debtor when a credit card was issued without a credit check. *Id.* at 1084–1085. The Court reasoned:

'Congress was [when passing § 523] ... concerned that creditors use, when feasible, "other sources of information, such as credit bureau reports, to verify the accuracy of the [debtor's] list of debts."' *In re Martin,* 761 F.2d at 1166. *See also* H.R.REP. No. 595, 95th Cong., 1st Sess. 130 (1977), *reprinted in* 1978 U.S.CODE CONG. & ADMIN. NEWS 5787, 5963, 6091. In cases where 'minimal investigation and verification almost certainly would have uncovered the falsity of the representations,' a bank's debt must be discharged if no such investigation had been performed. *In re Mullet,* 817 F.2d 677, 680 (10th Cir.1987). 'Misplaced trust' is insufficient for nondischargeability. A lender must investigate creditworthiness and ferret out ordinary credit information. *In re Hunter,* 780 F.2d 1577, 1580 (11th Cir. 1986) *Cf. In re Lansford,* 822 F.2d 902, 904

(9th Cir.1987) (assuming that a creditor bears a duty to investigate and verify a debtor's financial statement) (citing *Kentile Floors, Inc. v. Winham,* 440 F.2d 1128, 1131–32 (9th Cir.1971)). Since [the creditor] made 'no attempt to ascertain what [the debtor's] ability to pay might have been before it issued the cards,' the debt is dischargeable. *In re Quick,* 70 B.R. 562 (Bankr.S.D.Cal.1987)

This requirement that a credit check be performed best advances the policy of the Bankruptcy Act. As one commentator explained:

[F]rom the perspective of the bankruptcy proceeding, it is inequitable to reward a possible imprudent creditor who failed to detect the debtor's misrepresentation by excepting her debt from discharge, the debtor's other more prudent creditors have their claims evaluated collectively. As a matter of fairness among creditors, it is inappropriate to allow a creditor who is likely to have been imprudent to participate in the liquidation of the debtor's assets.

Zeiger, *The Fraud Exception to Discharge in Bankruptcy: A Reappraisal,* 38 Stan. L.Rev. 891, 907–08 (Feb.1986)

\* \* \* \* \* \*

[The creditor] and the dissent have also charged that, assuming arguendo an unreasonable initial issuance of credit, such action was nevertheless irrelevant because the bank reasonably relied upon [the debtor's] implied assurances that he would discharge each indebtedness incurred against [the creditor's] line of credit which resulted from the use of [the creditor's] mastercard.

\* \* \* \* \* \*

However, even if each credit card charge constituted a 'representation' of ability to pay, the case law and legislative history make it clear that a credit check must be conducted at some point; otherwise the exception to discharge is unavailable.

*Ward,* 857 F.2d at 1084–85. Further, the Court's reasoning in *Ward* can be seen as applicable to all situations involving customer credit. *Id.* See also *In re Ledford,* 970 F.2d

at 1560 (stating that the conclusion in *Ward* was strengthened by the fact that the congressional committee reports suggested that *consumer finance companies* use readily available independent sources of information such as credit bureau reports).

■ In the case at bar, Plaintiff claims that Mrs. Ferrell never indicated the existence of other debts due and owing to creditors at the time she applied for the loan to purchase the Saab, and cites this Court in *In re Cole,* 164 B.R. 951 (Bankr.N.D.Ohio 1993), for the proposition that debtor's silence may constitute a materially false representation prohibiting discharge of indebtedness, though that statement was only dicta in that case (Plaintiff improperly quoted a Syllabus paragraph which is not part of the opinion). This Court has not seen the implied representation theory used outside the credit card context, but even were such a use appropriate, this Court nevertheless finds that Plaintiff has not shown either justifiable or reasonable reliance. Further, as the *Ward* quotation above indicates, the creditor in *Ward* tried to argue that the debtor made an implied representation, and the Court nevertheless found that a credit check must be conducted at some point. 857 F.2d at 1085. Thus, this Court finds that the Plaintiff has not established reasonable reliance under either 523(a)(2)(A) or 523(a)(2)(B).

■ Plaintiff's last cause of action for which it seeks summary judgment is under § 523(a)(2)(C), alleging that a presumption should exist that the debt is nondischargeable because the debt in question was a luxury item. Plaintiff argues that the Defendant's Saab at issue in this case was a luxury good, and that the Defendants deliberately waited to file bankruptcy just three days outside the sixty (60) day period prescribed in § 523(a)(2)(C). The Plaintiff must demonstrate under § 523(a)(2)(C) that (1) a consumer debt, (2) owed to a single creditor, (3) aggregating more than One Thousand Dollars ($1,000.00), (4) for luxury goods or services, (5) incurred by an individual debtor, (6) on or within sixty (60) days before the filing of the petition. See *In re Triplett,* 139 B.R. 687 (Bankr.N.D.Ohio 1992) (The dates and amounts above reflect subsequent amendments to the Bankruptcy Code).

■ In the present case the Plaintiff has not shown upon summary judgment that the item was a luxury good or that the item was purchased in the sixty day presumption period. Though it cannot be argued that a Saab is an inexpensive car that could, in appropriate circumstances, constitute a luxury item, this does not mean that it must necessarily be a luxury item. More facts are necessary to make this determination, especially considering that the case replaced the car which Mr. Ferrell claims to have routinely driven. To make this determination, the additional debt the Defendants incurred for this car, Two Thousand Seven Hundred Sixty-one and 75/100 Dollars ($2,761.75), must be considered against the Defendants financial situation on the date in question, as well as the entire circumstances surrounding the purchase. Further, the veracity of the parties at trial could be important.

■ Also, the Plaintiff has not offered any evidence to support its conclusion that the Defendants deliberately waited to file bankruptcy to take the Saab purchase out of the sixty day presumption period. Nor has the Plaintiff offered any case law that would support the conclusion that simply filing shortly before the sixty day presumption period would be enough to prove an abuse of the Bankruptcy process, absent other evidence. A creditor does not get the presumption of non-dischargeability unless the debt was incurred in the time frame provided in § 523(a)(2)(C), and Plaintiff has not made a strong enough argument that this Court should use it equitable powers otherwise. The circumstances surrounding the bankruptcy and the veracity of the parties could again be important here as well.

For all these reasons, the Plaintiff's Motion for Summary Judgment will be denied, and the matter set for trial. In reaching the conclusion found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this opinion.

Accordingly, it is

**ORDERED** that the Motion for Summary Judgment of Nissan Motor Acceptance Corp. be, and is hereby, *DENIED*.

It is **FURTHER ORDERED** that a Trial on this matter shall be, and is hereby, scheduled for January 8, 1997 at 10:00 A.M. in Courtroom # 2, Room 119, United States Courthouse, 1716 Spielbush Avenue, Toledo, Ohio.

It is **FURTHER ORDERED** that on or before January 2, 1997, the parties exchange and file with the Court pre–trial statements, lists of witnesses, lists of exhibits, and any stipulations upon which the parties can agree. The foregoing is mandatory. *Failure to file any of the foregoing may result in the suppression of witnesses or exhibits from introduction at the Trial, the Trial being continued, and/or sanctions being imposed by the Court.*