In re Susan Kay **GONZALES,** Debtor.

### FIRST DEPOSIT NATIONAL BANK, Plaintiff,

v.

### Susan Kay **GONZALES,** Defendant.

### Bankruptcy No. 94–3210.

United States Bankruptcy Court, N.D. Ohio, Western Division.

Sept. 13, 1995.

Lee R. Kravitz, Cleveland, OH, for plaintiff.

Michael J. Bender, Jr., Lima, OH, for defendant.

## MEMORANDUM OPINION
## AND DECISION

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court upon Plaintiff's Complaint to Determine Dischargeability of Debt, Motion for Summary Judgment, Memorandum in Support, and Defendant's Memorandum in Opposition. The Court has reviewed the arguments of Counsel, exhibits, as well as the entire record of the case. Based upon that review and for the following reasons, the Court finds that questions of material fact exist as to Defendant's intent at the time the credit card charges were incurred. Accordingly, the Plaintiff's Motion for Summary Judgment shall be denied, and that the matter shall be scheduled for Trial.

### FACTS

This adversarial proceeding was initiated upon the Complaint of First Deposit National Bank (hereinafter "First Deposit"), under § 523 of the Bankruptcy Code. Following the Answer of Susan Kay Gonzales (hereafter "Debtor"), First Deposit filed the present Motion for Summary Judgment.

The following facts are not in dispute. In 1988, First Deposit granted Debtor's application for a Visa Gold credit card based on the excellent condition of her credit report. For several years, she consistently made purchases and payments on this credit card, and continued to remain in good standing with First Deposit. According to Debtor, she "never missed one payment."

During this time, Debtor was employed as a fire marshal with General Dynamics for seven years with income of approximately Thirty Thousand Dollars ($30,000.00). In February of 1993, Debtor was laid off and given one year of unemployment and sub-pay through March, 1994. In December of 1993, Debtor had an approximate Five Thousand Dollar ($5,000.00) balance on her Visa Gold credit card, and a credit limit was Seven Thousand Dollars ($7,000.00). She paid off this balance at the end of 1993 by obtaining cash advances from her other credit cards. Debtor testified upon deposition that, at the time, she had enough income to make monthly payments on each credit card, but took

cash advances on her other credit cards to so that she could have "one card completely clear" for moving expenses and general expenses until she started a new job. By February, 1994, the account balance was zero.

Also in late 1993, Debtor pursued employment with the Allen Correctional Institute (hereafter "Allen Correctional"). Because of her previous experience, Debtor was confident of acquiring a correctional officer position. According to Debtor, she was to commence her employment in April, 1994, after completing the Civil Service testing on March 29, 1994. Debtor stated that she was informed at the testing that she would be hired within a couple of weeks. She did not receive a letter from Allen Correctional until May 19, 1994. (The record is not clear as to the reason for the delay. Debtor asserts that Allen Correctional had her old address and therefore had trouble reaching her.) The letter stated that she had passed the test, but that a background investigation must be completed before they would consider her for employment. Ultimately, Debtor did not begin working for Allen Correctional until October, 1994.

Debtor incurred the disputed debt with First Deposit between February 4, 1994, and April 15, 1994. This debt consists of the credit card balance of Six Thousand Seven Hundred Four Dollars and Thirty-three Cents ($6,704.33), plus interest and the costs of this action. Included in the credit card balance are charges for two Florida airline tickets, a rental car and two cash advances for traveling expenses in February. Debtor testified that at this time she still believed she would start with Allen Correctional in April, and therefore wanted to take a vacation beforehand. In March and April, Debtor made two payments, and also charged a Two Thousand Seven Hundred Fifty Dollars ($2,750) cash advance as well as sixteen other purchases. The cash advance was for another trip to Florida. Debtor testified that she and her fiancé were considering relocating there, and therefore looked at houses and interviewed for jobs. The other sixteen charges were, according to Debtor, for everyday purchases, eye glasses, and car repairs.

Debtor also asserts that when Debtor was not offered a position with Allen Correctional in April, 1994, Debtor began waitressing in addition to her odd jobs in housekeeping. She made no more charges to Plaintiff's account after the month of April, 1994, and continued to make payments through May, 1994, on that account. Even with her part-time jobs Debtor claims that she could not maintain all her credit card payments. Consequently, on July 22, 1994, Debtor filed for Bankruptcy in this Court.

First Deposit maintains that Debtor's credit card balance is a non-dischargeable debt according to 11 U.S.C. § 523(a)(2)(A) because the Debtor acquired the debt by "false pretenses, a false representation, or actual fraud." First Deposit bases this claim on the assertion that Debtor's implied representation that she had the present ability to repay her credit card balance when she in fact did not.

In her Response, Debtor argues that the Motion for Summary Judgment should be denied because there was no fraudulent conduct or intentional misrepresentation of the Debtor. Debtor claims that she consistently made the required monthly payments until June, 1994, out of her unemployment pay and part-time employment. She further asserts that she continued to use the credit card through April, 1994, firmly relying on her new employment which was to commence in April, 1994. The Debtor argues that she acted in good faith on her potential ability to pay Plaintiff's account in the same manner she had continually paid since 1987.

### LAW

The Bankruptcy Code, Bankruptcy Rules, and Federal Rules of Civil Procedure provide in pertinent part:

**11 U.S.C. § 523. Exceptions to discharge**

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual from any debt—

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

### Rule 7056. Summary Judgment

Rule 56 [of the Federal Rules of Civil Procedure] applies in adversary proceedings.

### Federal Rules of Civil Procedure, Rule 56. Summary Judgment

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions of file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

### DISCUSSION

The issue to be resolved herein is whether First Deposit has shown that there is no material issue of genuine fact, and is entitled to summary judgment as a matter of law. Determinations as to the dischargeability of particular debts are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(I). Therefore, the case is a core proceeding.

In order for the First Deposit to prevail on its Motion for Summary Judgment, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In order to prevail, the movant must demonstrate all elements of the cause of action. *R.E. Cruise, Inc. v. Bruggeman,* 508 F.2d 415, 416 (6th Cir.1975). Thereafter, the opposing party must set forth specific facts showing there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Inferences drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Matsushita v. Zenith Radio Corp.,* 475 U.S. 574, 586–88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). See *In re Bell,* 181 B.R. 311 (Bankr.N.D.Ohio 1995), for a more thorough discussion of the law regarding summary judgment.

In the case at bar, First Deposit, the moving party, must prove five elements under 11 U.S.C. § 523(a)(2)(A) to succeed on its claim, in addition to proving there is no genuine issue of a material fact. The elements required are: (1) the debtor made false representations, (2) the debtor knew such representations to be false at the time they were made, (3) the representations were made with the intent to deceive the creditor, (4) the creditor relied on the representations, and (5) the creditor's loss was the proximate result of the misrepresentation having been made. *In re Phillips,* 804 F.2d 930, 932 (6th Cir.1986); *In re Martin,* 761 F.2d 1163, 1165 (6th Cir.1985); *In re Triplett,* 139 B.R. 687, 689 (Bankr.N.D.Ohio 1992). The Plaintiff must sustain its burden by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). If there is room for an inference of honest intent, the question must be resolved in favor of the debtor. *In re Constantino,* 72 B.R. 231 (Bankr.N.D.Ohio 1987).

In its Memorandum in Support of Motion for Summary Judgment, First Deposit claims it has clearly demonstrated each of the required elements necessary to sustain its burden of proof. In addition, First Deposit claims there is no genuine issue of any material fact because all material facts were admitted by the Defendant. The Court can not agree.

The second and third requisite elements of § 523(a)(2)(A) are that the Debtor knowingly made false representations with the intent to deceive the creditor. When debts are incurred through the use of credit cards, it has been held that the debtor makes an implied representation of her ability to repay when the charges were made. *In re Higgs,* 39 B.R. 181, 184 (Bankr.N.D.Ohio 1984); *In re Wilson,* 32 B.R. 772, 776 (Bankr. E.D.Tenn.1983); *In re Barthol,* 75 B.R. 305, 307 (Bankr.S.D.Ohio 1987); *In re Chech,* 96 B.R. 781, 783 (Bankr.N.D.Ohio 1988). The knowledge and intent elements can usually be proven only by circumstantial evidence demonstrating a subjective intent on the

Debtor's part to deceive the merchant or issuer into believing that he or she could pay for the goods when this was not the case. *In re Satterfield*, 25 B.R. 554 (Bankr.N.D.Ohio 1982); *In re Weaver*, 139 B.R. 677, 679 (Bankr.N.D.Ohio 1992). In *Satterfield*, the Court established several factors as relevant in determining the existence or nonexistence of an actual intent to deceive:

1. the length of time between the charges made and the filing of bankruptcy;

2. whether or not an attorney has been consulted concerning the filing of bankruptcy before the charges were made;

3. the number of charges made;

4. the amount of the charges;

5. the financial condition of the debtor at the time the charges are made; and

6. whether the charges were above the credit limit of the account.

25 B.R. at 556.

Plaintiff argues that Debtor's inability to pay the charges when incurred, plus the use of the charges to fund trips to Florida while unemployed, proves that Debtor did not intend to repay the charges when they were incurred. Although the Court agrees that these facts are cause for concern, the Court believes there is a sufficient question of fact as to Debtor's intent. Debtor did make three monthly payments before filing bankruptcy, and each payment was on time and above the minimum payment required. Also, the Debtor claims that her prospective new employment shows her lack of intent to deceive. She claims she relied on her new job as a source of income to repay the debt she incurred. These facts, viewed in the light most favorable to the Debtor, present an issue of material fact as to Debtor's intent to repay.

In a similar case, a debtor claimed that promising prospects for employment refuted his intent to deceive. *In re Chech*, 96 B.R. 781 (Bankr.N.D.Ohio 1988). In *Chech*, the debtor had exceeded his credit limit on most of fifteen different charge accounts while unemployed. Though the Court remained unpersuaded as to the debtor's basis for optimism, it nevertheless concluded that evi-dence was needed to be heard regarding those prospects. *Id.* at 784.

As in *Chech*, this Court remains unpersuaded as to Debtor's basis for optimism, but believes a genuine issue of a material fact has emerged. Intent to deceive is a difficult element to establish, and although intent is generally inferred, courts have recognized "that misconceived optimism is not uncommon to the financially distressed." *In re Stewart*, 91 B.R. 489, 495 (Bankr.S.D.Iowa 1988) (quoting *Matter of Buford*, 25 B.R. 477, 482 (Bankr.S.D.N.Y.1982)). Whether the Debtor in the case herein intended to deceive First Deposit through the use of her credit card could depend on the factual questions that could be resolved at trial, such as exactly why Debtor paid off the balance of this credit card with other cards, and whether the Debtor's Two Thousand Seven Hundred Fifty Dollars ($2,750) cash advance was for vacationing or relocating. Also, more details surrounding Debtor's communication with Allen Correctional would aid in resolving the intent to deceive issue.

Because there is room for an inference of honest intent exists, there is a triable issue of fact. In reaching the conclusion found herein, the court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this opinion.

Accordingly, it is

**ORDERED** that the Motion for Summary Judgment of First Deposit National Bank be, and is hereby, *DENIED*.

It is **FURTHER ORDERED** that a Trial on this matter shall be, and is hereby, scheduled for Thursday, October 19, 1995 at 10:00 A.M. in Courtroom # 2, Room 119, United States Courthouse, 1716 Spielbush Avenue, Toledo, Ohio.